**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

### 2285CV01088 Brooks, Shelly et al vs. Umass Memorial Healthcare Inc.

| | |
|---|---|
| **CASE TYPE:** Torts | **FILE DATE:** 09/23/2022 |
| **ACTION CODE:** B22 | **CASE TRACK:** F - Fast Track |
| **DESCRIPTION:** Employment Discrimination | |
| **CASE DISPOSITION DATE:** 02/17/2023 | **CASE STATUS:** Closed |
| **CASE DISPOSITION:** Transferred to another Court | **STATUS DATE:** 02/17/2023 |
| **CASE JUDGE:** | **CASE SESSION:** Civil A |

| PARTIES |
|---|

| | | |
|---|---|---|
| **Plaintiff**<br>Brooks, Shelly<br>236 Partridge Hill Road<br>Charlton, MA 01507 | **Attorney**<br>Ryan Patrick McLane<br>McLane and McLane, LLC<br>McLane and McLane, LLC<br>269 South Westfield St<br>Feeding Hills, MA 01030<br>Work Phone (413) 789-7771<br>Added Date: 09/23/2022 | 697464 |
| | **Attorney**<br>Lauren E Bradford<br>Massachusetts Bar<br>3860 20th Ave SE<br>Naples, FL 34117<br>Work Phone (401) 714-4261<br>Added Date: 01/09/2023 | 700084 |
| **Plaintiff**<br>Dyer, Shannon<br>157 West Stafford Road<br>Stafford Springs, CT 06076 | **Attorney**<br>Ryan Patrick McLane<br>McLane and McLane, LLC<br>McLane and McLane, LLC<br>269 South Westfield St<br>Feeding Hills, MA 01030<br>Work Phone (413) 789-7771<br>Added Date: 09/23/2022 | 697464 |
| | **Attorney**<br>Lauren E Bradford<br>Massachusetts Bar<br>3860 20th Ave SE<br>Naples, FL 34117<br>Work Phone (401) 714-4261<br>Added Date: 01/09/2023 | 700084 |

| | |
|---|---|
| **Plaintiff**<br>Merolla, Jovanna<br>3 Julia Ann Drive<br>Holland, MA 01521 | **Attorney**　　　　　　　　　　　**697464**<br>Ryan Patrick McLane<br>McLane and McLane, LLC<br>McLane and McLane, LLC<br>269 South Westfield St<br>Feeding Hills, MA 01030<br>Work Phone (413) 789-7771<br>Added Date: 09/23/2022 |
| | **Attorney**　　　　　　　　　　　**700084**<br>Lauren E Bradford<br>Massachusetts Bar<br>3860 20th Ave SE<br>Naples, FL 34117<br>Work Phone (401) 714-4261<br>Added Date: 01/09/2023 |
| **Plaintiff**<br>Thomas, Rebecca<br>55 Southbridge Road<br>Warren, MA 01083 | **Attorney**　　　　　　　　　　　**697464**<br>Ryan Patrick McLane<br>McLane and McLane, LLC<br>McLane and McLane, LLC<br>269 South Westfield St<br>Feeding Hills, MA 01030<br>Work Phone (413) 789-7771<br>Added Date: 09/23/2022 |
| | **Attorney**　　　　　　　　　　　**700084**<br>Lauren E Bradford<br>Massachusetts Bar<br>3860 20th Ave SE<br>Naples, FL 34117<br>Work Phone (401) 714-4261<br>Added Date: 01/09/2023 |

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
Docket Report

| | |
|---|---|
| **Defendant**<br>Umass Memorial Healthcare Inc.<br>365 Plantation Street<br>Worcester, MA 01605 | **Attorney**  636853<br>Robert L Kilroy<br>Mirick, O'Connell, DeMallie and Lougee, LLC<br>Mirick, O'Connell, DeMallie and Lougee, LLC<br>1800 West Park Drive<br>Suite 400<br>Westborough, MA 01581-3926<br>Work Phone (508) 860-1464<br>Added Date: 12/20/2022 |
| | **Attorney**  681386<br>Amanda Marie Baer<br>Mirick, O'Connell, DeMallie and Lougee, LLP<br>Mirick, O'Connell, DeMallie and Lougee, LLP<br>1800 West Park Drive<br>Suite 400<br>Westborough, MA 01581<br>Work Phone (508) 860-1472<br>Added Date: 12/20/2022 |
| | **Attorney**  699260<br>Massiel L Sanchez<br>Mirick O'Connell<br>Mirick O'Connell<br>1800 West Park Drive Suite 400<br>Westborough, MA 01581<br>Work Phone (508) 768-0733<br>Added Date: 12/20/2022 |
| | **Attorney**  707121<br>Ashlyn E Dowd<br>Ashlyn<br>Ashlyn<br>1800 West Park Drive<br>Suite 400<br>Westborough, MA 01581<br>Work Phone (508) 768-0719<br>Added Date: 12/20/2022 |

**FINANCIAL SUMMARY**

| | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| | **Total** | **442.50** | **442.50** | **0.00** | **0.00** |

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| Date | Ref | Description | Judge |
| 09/23/2022 | | Class action filed under Mass. R. Civ. P. 23 (see P#1) | |
| 09/23/2022 | 1 | Complaint electronically filed. | |
| 09/23/2022 | 2 | Civil action cover sheet filed. | |
| 09/23/2022 | | Demand for jury trial entered. | |
| | | Applies To: Brooks, Shelly (Plaintiff); Dyer, Shannon (Plaintiff); Merolla, Jovanna (Plaintiff); Thomas, Rebecca (Plaintiff) | |
| 09/26/2022 | | Case assigned to: DCM Track F - Fast Track was added on 09/26/2022 | |
| 09/26/2022 | | EDocument sent: A Tracking Order was generated and sent to: Plaintiff, Attorney: Ryan Patrick McLane, Esq. ryan@mclanelaw.com Plaintiff, Attorney: Ryan Patrick McLane, Esq. ryan@mclanelaw.com Plaintiff, Attorney: Ryan Patrick McLane, Esq. ryan@mclanelaw.com Plaintiff, Attorney: Ryan Patrick McLane, Esq. ryan@mclanelaw.com | |
| 12/05/2022 | 3 | Service Returned for Defendant Umass Memorial Healthcare Inc.: Service through person in charge / agent; Service made on 11/23/22. | |
| 12/20/2022 | 4 | Defendant Umass Memorial Healthcare Inc.'s Assented to Motion to Answer or Otherwise Respond to Plaintiffs' Class Action Complaint [E-FILED] | |
| 12/22/2022 | | Endorsement on Motion to extend time to answer or otherwise respond to Plaintiffs' class action complaint (#4.0): ALLOWED Notice Sent 12/23/22 | Yarashus |
| | | Judge: Yarashus, Hon. Valerie A | |
| 12/23/2022 | | EDocument sent: A Clerk's Notice (eDoc) was generated and sent to: Plaintiff, Attorney: Ryan Patrick McLane, Esq. ryan@mclanelaw.com Defendant, Attorney: Robert L Kilroy, Esq. rkilroy@mirickoconnell.com Defendant, Attorney: Amanda Marie Baer, Esq. abaer@mirickoconnell.com Defendant, Attorney: Massiel L Sanchez, Esq. msanchez@mirickoconnell.com Defendant, Attorney: Ashlyn E Dowd, Esq. adowd@mirickoconnell.com | |
| 01/09/2023 | | Attorney appearance On this date Lauren E Bradford, Esq. added for Plaintiff Shelly Brooks | |
| 01/09/2023 | | Attorney appearance On this date Lauren E Bradford, Esq. added for Plaintiff Shannon Dyer | |
| 01/09/2023 | | Attorney appearance On this date Lauren E Bradford, Esq. added for Plaintiff Jovanna Merolla | |
| 01/09/2023 | | Attorney appearance On this date Lauren E Bradford, Esq. added for Plaintiff Rebecca Thomas | |

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| 01/09/2023 | 5 | Amended: FIRST Class Action amended complaint filed by Shelly Brooks, Shannon Dyer, Jovanna Merolla, Rebecca Thomas<br>(E-FILED) |
|---|---|---|
| 01/09/2023 | | Demand for jury trial entered. |
| | | (P#5) |
| | | Applies To : Brooks, Shelly (Plaintiff); Dyer, Shannon (Plaintiff); Merolla, Jovanna (Plaintiff); Thomas, Rebecca (Plaintiff) |
| 02/02/2023 | 6 | Defendant Umass Memorial Healthcare Inc.'s Notice of Filing Removal |
| 02/02/2023 | 7 | Notice of Removal to the United States District Court filed by |
| | | Applies To : Umass Memorial Healthcare Inc. (Defendant) |
| 02/07/2023 | | Case transferred to another court. |
| 02/17/2023 | | General correspondence regarding copies of case mailed 2/17/23 |

A true copy by photostatic process
Attest:
Asst. Clerk

## COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF THE TRIAL COURT

**WORCESTER, SS.**                    **WORCESTER SUPERIOR COURT**

**SHELLY BROOKS, SHANNON DYER,**
**JOVANNA MEROLLA, and**
**REBECCA THOMAS, Individually and**
**and on behalf of all others similarly**
**situated,**

**Plaintiffs**                       CIVIL ACTION NO.: 2285CV01088A

**v.**

**UMASS MEMORIAL HEALTHCARE, INC.,**

**Defendants**

### CLASS ACTION COMPLAINT

### PARTIES

1. Shelly Brooks is an individual who resides in Charlton, Worcester County, Massachusetts. She was employed by UMass Memorial Healthcare, Inc., working as a registered nurse at UMass Memorial's Southbridge, MA location[1].

2. Shannon Dyer is an individual who resides in Stafford Springs, Tolland County, Connecticut. She was employed by UMass Memorial Healthcare, Inc., working as a registered nurse at UMass Memorial's Southbridge, MA location.

3. Jovanna Merolla is an individual who resides in Holland, Hampden County, Massachusetts. She was employed by UMass Memorial Healthcare, Inc., working as a registered at UMass Memorial's Southbridge, MA location.

---

[1] This would be Harrington Hospital, or UMass Memorial Health – Harrington Hospital, Inc., which operates under the UMass Memorial Health system.

4. Rebecca Thomas is an individual who resides in Warren, Worcester County, Massachusetts. She was employed by UMass Memorial Healthcare, Inc., working as a phlebotomist at UMass Memorial's Worcester, MA location.

5. Defendant UMass Memorial Healthcare, Inc., is a nonprofit corporation, operating hospitals throughout central Massachusetts, with a principal office at 365 Plantation Street in Worcester, Massachusetts.

## JURISDICTION AND VENUE

6. This is a class action lawsuit against the Defendant for religious discrimination under Title VII of the Civil Rights Act and G.L. c. 151B.

7. Plaintiffs Shelly Brooks and Rebecca Thomas reside in Worcester County and defendant's principal office is located in Worcester County; therefore, venue is proper in accordance with G.L. c. 223 § 1.

8. Plaintiffs have obtained a "Notice of Right to Sue" from the U.S. Equal Employment Opportunity Commission, which allows this Court jurisdiction over the Religious Discrimination claims.

## Factual Background

9. In mid-September of 2021, defendant announced a mandatory COVID-19 vaccination policy wherein all UMass Memorial employees were required to be fully vaccinated against COVID-19.

10. Employees who did not receive either a first dose of Pfizer or Moderna, or one Johnson & Johnson vaccine by December 1, 2021, and who did not receive an approved medical or religious exemption would be considered "separated

2

from employment" from UMass Memorial Health effective December 2, 2021.

11. Defendant, in a correspondence to its employees dated September 15th, 2021, stated that, "A subgroup of the Vaccination Steering Committee has been designated to review, approve or deny all requests for exemption."

12. Plaintiffs and numerous other employees submitted requests for religious accommodation to the defendant using the defendant's form for vaccine exemptions, detailing the sincerely held religious beliefs that preclude them from taking any of the three available COVID-19 vaccines.

13. On this form, defendant required its employees to explain their religious beliefs by answering four questions.

14. Plaintiffs, along with numerous other employees, were given the option to be placed on unpaid leave on November 2, 2021, to obtain a first dose of a COVID-19 vaccine by December 1, 2021 in order to keep their positions, or simply turn in their badge by December 2, 2021.

15. Plaintiffs and numerous other employees were terminated for not receiving any of the COVID-19 vaccines due to their sincerely held religious objections.

**Plaintiff's Sincerely Held Religious Beliefs**

16. Plaintiffs have sincerely held religious beliefs that preclude them from complying with the mandatory COVID-19 Vaccination Policy.

17. A fundamental component of the religious beliefs sincerely held by plaintiffs Dyer, Merolla, and Thomas is that all life is sacred, from the moment of

conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

18. These beliefs are rooted in Biblical teachings[2], in that God forms children from the womb, personally knows them prior to their birth, and that therefore all life is sacred from the moment of conception:

    a. "Thou shalt not kill[3]." *Exodus* 20:13 (KJV);

    b. "Ye have heard that it was said of them of old time, Thou shalt not kill; and whosoever shall kill shall be in danger of the judgment..." *Matthew* 5:21 (KJV);

    c. "Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee..." *Jeremiah* 1:5 (KJV);

    d. "I was cast upon thee from the womb: thou art my God from my mother's belly." *Psalms* 22:10 (KJV);

    e. "For thou has possessed my reins: thou has covered me in my mother's womb. I will praise thee; for I am fearfully and wonderfully made: marvelous are thy works; and that my soul knoweth right well." *Psalm* 139:13-14 (KJV);

    f. "Thine eyes did see my substance, yet being unperfect; and in thy book all my members were written, which in continuance were fashioned, when as yet there was none of them." *Psalm* 139:16 (KJV);

---

[2] See: https://www.gotquestions.org/abortion-Bible.html
[3] *Exodus* 21:22-25 explains that this includes babies inside of the womb.

4

g. "The Lord that made thee, and formed thee from the womb..." *Isaiah* 44:2 (KJV);

h. "Thus saith the Lord, thy redeemer, and he that formed thee from the womb, I am the Lord that maketh all things." *Isaiah* 44:24 (KJV);

i. "The Lord hath called me from the womb; from the bowels of my mother hath he made mention of my name." *Isaiah* 49:1 (KJV);

j. "The Lord that formed me from the womb to be his servant." *Isaiah* 49:5 (KJV);

k. "Let us make man in our image, after our likeness... So God created man in His own image; in the image of God created He him; male and female created he them." *Genesis* 1:26-17 (KJV);

19. Plaintiffs Dyer, Merolla, and Thomas believe, therefore, that taking these precious lives through the practice of abortion is akin to murder of an innocent human expressly forbidden in the Bible. *See, e.g. Exodus* 20:13; ("Though shalt not kill." (KJV)); *Exodus* 21:22-23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 ("the innocent and righteous slay thou not, for I will not justify the wicked." (KJV)); *Genesis* 9:6 ("Whoso sheddeth a man's blood, by man shall his blood be shed: for in the image of God made he man." (KJV)); *Deuteronomy* 27:25 ("Cursed be he that taketh reward to slay an innocent person." (KJV)); *Proverbs* 6:16-17 ("These six things doth the Lord hate: yea, seven are an abomination to him . . . hands that shed innocent blood." (KJV).Plaintiffs' sincerely held religious beliefs, rooted in the Biblical

5

Date Filed 9/23/2022 1:42 PM
Superior Court - Worcester
Docket Number

Scriptures above, consider anything that supports, justifies, condones or benefits from the practice of abortion, which takes an innocent life, to be sinful and in complete opposition to the Bible, from which they must abstain and avoid completely.

20. Plaintiffs' sincerely held religious beliefs, rooted in the Scriptures above, are that it is an affront to the Bible's teaching that all life is sacred for them to use a product derived from **or connected in any way to abortion.**

21. Plaintiffs' sincerely held religious beliefs, rooted in the Scriptures above, preclude them from accepting any one of the three currently available COVID-19 vaccines, as all three (Pfizer, Moderna, Johnson & Johnson) were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

22. Johnson & Johnson used aborted fetal cell lines to produce and manufacture its vaccines[4].

23. Moderna and Pfizer/BioNTech COVID-19 vaccines also trace their origins to research on aborted fetal cells and are ultimately derived from research and testing on aborted fetal cell lines: "Early in the development of mRNA vaccine technology, fetal cells were used for 'proof of concept' (to demonstrate how a cell

---

[4] See: https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells, "For the Johnson & Johnson vaccine, fetal cell lines were used in the production and manufacturing stage. To make the Johnson & Johnson vaccine, scientists infect PER.C6 fetal cell lines to grow the adenovirus vector." See also:
https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf, and
https://www.science.org/doi/full/10.1126/science.368.6496.1170

could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein." See North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021) as referenced in Footnote 3.

24. Pfizer and Moderna's use of aborted fetal cells in the "proof of concept" phase of their COVID-19 mRNA vaccine development was also confirmed by the Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020): https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf.

25. In that all three of the subject vaccines are developed and produced from, tested with, researched on, or otherwise connected to aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their bodies, regardless of the perceived benefit or rationale.

26. Plaintiffs Brooks and Thomas further hold sincere religious beliefs that God is directing them not to take the vaccination and that to act outside of their faith and God's command would be sin. (Romans 14:23). Plaintiffs Brooks and Thomas hold sincere religious beliefs that their bodies belong to God and are temples of God's Holy Spirit, (1 Cor. 6:19-20), and that injecting any of the ingredients contained within the three available COVID-19 vaccines would defile their bodies and dishonor God.

27. These beliefs are rooted in the Bible's teachings that "all Scripture is

given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

28. Plaintiffs therefore believe that they must conform their lives life to the commands and teachings of Scripture, including decisions regarding medical care.

29. Plaintiffs share a sincerely held religious belief that compels them to follow the teachings of the Holy Spirit, who has not given them peace or comfort to accept any of the three currently available COVID-19 vaccines.

30. Plaintiffs share a sincerely held religious belief that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. See *John* 16:8,13 ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . when he, the Spirit of truth, is come, he will guide you into all truth: for he shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come." (KJV)).

31. Plaintiffs have a sincerely held religious belief that they are being guided and instructed by the Holy Spirit not to accept any of the three subject vaccines and that it would be a sin against God to do so.

32. Plaintiff Merolla's faith has additionally informed her sincerely held belief that the events that our society is currently experiencing have been foretold by God and described in the book of Revelation, in particular: a warning against receiving the mark of the beast, which reads, "And he causeth all, both small

8

and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads." *Revelation 13:17 (KJV)*.  "And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name." *Revelation 13:17* (KJV).

33. Plaintiff Merolla's faithful reliance on the teachings of the Bible to guide her decisions has informed her sincerely held belief that the introduction of this vaccine and the measures that have been taken to force its acceptance are no different and no less evil than those referenced in the book of Revelation, and that to accept the vaccine would be to perform a role ushering in the last days, as outlined in Revelation 13.

34. Plaintiff Merolla's sincerely held belief is that the consequence of accepting the mark of the beast in her life is likewise described in the Bible as follows: "And the beast was taken, and with him the false prophet that wrought miracles before him, with which he deceived them that had received the mark of the beast, and them that worshipped his image. These both were cast alive into a lake of fire burning with brimstone." *Revelation 19:20* (KJV); It is therefore Plaintiff Merolla's sincerely held belief that to accept this vaccine would be a grave sin and betrayal of her faith and God, to whom she has devoted her life, and to put her soul in jeopardy.

35. Plaintiffs Brooks, Dyer, Merolla, and Thomas alike seek God's will in their lives through prayer, which forms the basis of their religious and moral consciences.

36. It is through prayer and reading the Bible that Plaintiffs receive revelation from the Holy Spirit as they attempt to live out God's will for their lives, a sincerely held religious belief also rooted in the Bible's teachings: "[f]or all who are being led by the Spirit of God, these are sons of God." *Romans* 8:14 (KJV), and "[i]f you love me, you will keep my commandments." *John* 14:15.

37. Plaintiffs' sincerely held beliefs are fundamental to the practice of their Christian faith.

38. Plaintiffs have sincerely held religious beliefs that Jesus Christ died on the cross for their sins, was resurrected three days later, and that when He ascended into Heaven, He sent the Holy Spirit to indwell His believers and to guide them in all aspects of their lives. *John* 16:7 ("Nevertheless I tell you the truth, it is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you." (KJV)).; *John* 14:26 ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you." (KJV)).

39. Plaintiffs have sincerely held religious beliefs that they shall receive all answers to their questions through prayer and supplication, including for decisions governing their medical health. See *James* 1:5 ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him." (KJV)); *Mark* 11:24 ("Therefore I say unto you, what things soever ye desire, when ye pray, believe that ye

10

receive them, and ye shall have them." (KJV)); *Philippians* 4:6-7 ("but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus." (KJV)); *1 John* 4:14-15 ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him." (KJV)).

40. Through much prayer and reflection, all Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and have been convicted by the Holy Spirit in their beliefs that accepting any of the three subject vaccines is against the teachings of Scripture and would be a sin.

41. Plaintiffs shared their beliefs with Defendant, complying with its policy by providing their beliefs to the best of their ability on Defendant's prescribed form, and asked defendant for exemption and reasonable accommodation for these beliefs, but defendant has unlawfully refused.

42. Plaintiffs can and will comply with all other reasonable alternatives to compliance with COVID-19 Vaccination Policy and to comply with the same alternatives to vaccination that the Defendant has provided as accommodations in the past or to alternatives to vaccination that the Defendant is offering to other employees.

11

## Wrongful Denial of Accommodation

43. Defendant's September 15, 2021 correspondence stated, "If an exemption is granted, Human Resources and the caregiver's manager will determine whether a reasonable accommodation can be provided to the caregiver in light of the exemption."

44. After submitting their request for accommodation, plaintiffs each received exemption denial letters which were seemingly intended to characterize all of their beliefs as insincere, hypocritical, illogical, or insignificant in light of their societal and occupational obligations.

45. Defendant offered no appeal from the decision nor any meaningful dialogue.

46. Asymptomatic transmission of COVID-19 is highly unlikely. See Madewell, Z. J., Yang, Y., Longini, I. M., Halloran, M. E. & Dean, N. E. (2020). *Household transmission of SARS-CoV-2: A systematic review and meta-analysis.* JAMA NETWORK OPEN, *3*(12), 1-17. https://doi.org/10.1001/jamanetworkopen.2020.31756; Cao, S., Gan, Y., Wang, C., Bachmann, M., Wei, S., Gong, J., Huang, Y., Wang, T., Li, L., Lu, K., Jiang, H., Gong, Y., Xu, H., Shen, X., Tian, Q., Lv, C., Song, F., Yin, X. & Lu, Z. (2020). *Post-lockdown SARS-CoV-2 nucleic acid screening in nearly ten million residents of Wuhan, China.* NATURE COMMUNICATIONS, *11*(1), 5917. https://doi.org/10.1038/s41467-020-19802-w; Buitrago-Garcia, D., Egli-Gany, D., Counotte, M. J., Hossmann, S., Imeri, H., Ipekci, A. M., Salanti, G. & Low, N. (2020). *Occurrence and transmission potential of asymptomatic and*

12

*presymptomatic SARS-CoV-2 infections: A living systematic review and meta-analysis.* PLOS MEDICINE, *17*(9), e1003346.

https://doi.org/10.1371/journal.pmed.1003346; Cevik, M., Tate, M., Lloyd, O., Maraolo, A. E., Schafers, J. & Ho, A. (2021). *SARS-CoV-2, SARS-CoV, and MERS-CoV viral load dynamics, duration of viral shedding, and infectiousness: A systematic review and meta-analysis.* THE LANCET, MICROBE, *2*(1), e13-e22. https://doi.org/10.1016/s2666-5247(20)30172-5; Peirlinck, M., Linka, K., Costabal, F. S., Bhattacharya, J., Bendavid, E., Ioannidis, J. P. A. & Kuhl, E. (2020). *Visualizing the invisible: The effect of asymptotic transmission on the outbreak dynamics of COVID-19.* COMPUTER METHODS IN APPLIED MECHANICS AND ENGINEERING, *372*(1), 113140. https://doi.org/10.1016/j.cma.2020.113410.

47. Plaintiffs' presence at the workplace unvaccinated while wearing a facemask, checking their temperature, monitoring for symptoms, physically distancing from patients and employees when possible would not pose a "direct threat." *See*: Baker, M., Rhee, C., Fiumara, K., Bennett-Rizzo, C., Tucker, R., Williams, S., . . . Klompas, M. (2020). COVID-19 infections among HCWs exposed to a patient with a delayed diagnosis of COVID-19. *Infection Control & Hospital Epidemiology, 41*(9), 1075-1076. https://doi:10.1017/ice.2020.256 (low infection rate amongst healthcare workers exposed to COVID-19 infected patients); Meghan A Baker, Karen Fiumara, Chanu Rhee, Sarah A Williams, Robert Tucker, Paige Wickner, Andrew Resnick, Michael Klompas, CDC Prevention

Epicenters Program, Low Risk of Coronavirus Disease 2019 (COVID-19) Among

Patients Exposed to Infected Healthcare Workers, *Clinical Infectious Diseases*,

Volume 73, Issue 7, 1 October 2021, Pages e1878–e1880,

https://doi.org/10.1093/cid/ciaa1269 (low infection rate amongst healthcare

workers exposed to COVID-positive patients); Cavanaugh AM, Spicer KB,

Thoroughman D, Glick C, Winter K. *Reduced Risk of Reinfection with SARS-*

*CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021.* MMWR

MORB MORTAL WKLY REP 2021;70:1081-1083.

https://doi.org/10.15585/mmwr.mm7032e1 (vaccinated racetrack worker study

showing that vaccinated workers were over two times **more likely** to be

reinfected than unvaccinated workers); Vitale, J., Mumoli, N., Clerici, P., de

Paschale, M., Evangelista, I., Cei, M. & Mazzone, A. (2021). *Assessment of*

*SARS-CoV-2 reinfection 1 year after primary infection in a population in*

*Lombardy, Italy.* JAMA INTERNAL MEDICINE, *181*(10), 1407-1409.

https://doi.org/10.1001/jamainternmed.2021.2959 (reinfection is incredibly

rare); Elijah, S (2022) *On What Basis Did Pfizer Claim 95%,*

https://brownstone.org/articles/on-what-basis-did-pfizer-claim-95/ (Analysis of

publicly-released Pfizer trial data shows **an actual effectiveness of 12%,**

compared to Pfizer's claim of 95%).

48. As the science has progressed on the study of COVID-19, studies have shown

that there is a very small statistical difference between vaccinated and

unvaccinated individuals when it comes to transmission of the virus. *See*

14

Gunter, Kampf, (November 19, 2021), *The Epidemiological Relevance of the COVID-19-Vaccinated population is increasing.* https://doi.org/10.1016/j.lanepe.2021.100272 (39% of infected are fully vaccinated); Brown CM, Vostok J, Johnson H, et al. *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings* — Barnstable County, Massachusetts, July 2021. MMWR Morb. Mortal Wkly. Rep 2021;70:1059-1062. http://doi.org/10.15585/mmwr.mm7031e2 (**Roughly 3/4 of all infected from outbreak of 469 cases were vaccinated).**

49. Plaintiffs' mask and thermometer are items that they could simply purchase themselves for less than $20, therefore their accommodation would not pose a financial hardship to the Defendant.

50. Massachusetts currently has approximately 5,000 vacancies for nurses at hospitals within the Commonwealth[5].

51. Thus, even if Plaintiffs or any other employee in their positions were to have to quarantine, the loss of staffing for the quarantine period would still prove less than perpetual vacancies due to not allowing vaccinated employees to work at Defendant's hospitals.

## CLASS ALLEGATIONS

52. Plaintiffs bring this action under Mass. R. Civ. P. 23.

---

[5] https://www.statnews.com/2022/07/13/nursing-shortage-massachusetts-hospitals-multimillion-dollar-costs/ (dated July 13, 2022).

53. Through this action, Plaintiffs seek to represent a class of all UMass Memorial employees who have requested or will request religious exemptions and accommodations from its mandatory COVID-19 vaccination policy and who have had those requests unlawfully denied (expressly or constructively).

54. The class is so numerous that joinder of all members is impractical. While the known class size is currently 53 employees (all who have obtained a right to sue from the EEOC), Defendant employs roughly 15,000 people[6]. The precise number and identification of the class members will be ascertainable from UMass Memorial's records during discovery.

55. There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

    a.  Did UMass Memorial comply with federal and state law when it denied religious accommodation requests due to prior vaccination history?

    b.  Did UMass Memorial comply with federal and state law when it denied the religious accommodation requests of plaintiffs and other employees without conducting a meaningful interactive process?

    c.  Did UMass Memorial violate federal and state law by granting exemption requests and providing reasonable accommodations to other employees while denying plaintiffs and other employees their similar requests?

---

[6] https://www.cbsnews.com/boston/news/umass-memorial-health-covid-vaccine-mandate-firings/

    d.  Did UMass Memorial comply with its Title VII obligation to engage in the interactive process when responding to each of its exemption requests?

    e.  Did UMass Memorial violate federal and state law by presuming plaintiffs' and other employees' religious beliefs were insincere, both on the face of the exemption application and without further interactive process?

56. Plaintiffs' claims are typical of the claims of the class because they, like the class members, requested exemption and accommodation from the COVID-19 vaccination policy and UMass Memorial denied those requests.

57. For the same reason, Plaintiffs will fairly and adequately protect the interests of the class.

58. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating Plaintiffs' claims. Joinder of all members is impracticable.

**COUNT I**
**(Title VII Violation)**
**42 U.S.C. § 2000e, *et seq.***

59. Plaintiffs realleges and adopts each and every allegation in paragraphs 1-58 as if fully set forth herein.

60. Title VII of the Civil Rights Act prohibits Defendant from discriminating against its employees on the basis of their sincerely held religious beliefs.

61. Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

62. Plaintiffs informed Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine policy.

63. Defendant failed to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests.

64. Irrespective of the interactive process, Defendant failed to provide Plaintiffs with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiffs because of their religious beliefs.

65. Defendant's failure to provide religious exemption and accommodation to Plaintiffs has caused them harm.

66. Once an employee demonstrates that their religious belief conflicts with an employment condition, "the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship. *Cloutier* v. *Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004).

67. Defendant did not demonstrate that accommodating Plaintiffs' religious beliefs would have resulted in undue hardship.

68. By failing to engage in a meaningful interactive process, offer any reasonable accommodation, or demonstrate an undue hardship, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

Wherefore, Plaintiffs requests relief against Defendant as set forth in their prayer for relief.

## COUNT II
### (Religious Discrimination)
### M.G.L. c. 151B

69. Plaintiffs realleges and adopts each and every allegation in paragraphs 1-68 as if fully set forth herein.

70. G.L. c. 151B §4 prohibits Defendant from discriminating against their employees on the basis of their sincerely held religious beliefs.

71. Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

72. Plaintiffs informed Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine policy.

73. Defendant failed to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests.

74. Irrespective of the interactive process, Defendant failed to provide Plaintiffs with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiffs because of their religious beliefs.

75. Defendants' failure to provide religious exemption and accommodation to Plaintiffs has caused Plaintiffs harm.

76. By failing to engage in a meaningful interactive process, offer any reasonable accommodation, or demonstrate an undue hardship, Defendant's discriminatory actions were intentional and/or reckless and in violation of G.L. c. 151B.

19

Wherefore, Plaintiffs requests relief against Defendant as set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

77. Certify this action as a class action under Mass. R. Civ. P. 23.

78. Award money damages, punitive damages, costs and attorney fees to Plaintiffs and others similarly situated to be proven at trial.

79. Award any other relief this Court deems equitable and just.

**Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury.**

Plaintiffs, by their attorneys,

/s/ Ryan P. McLane
Ryan P. McLane, Esq. (BBO: 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com

/s/ Lauren Bradford
Laren Bradford, Esq. (BBO: 700084)
3860 20th Ave SE
Naples, FL 34117
(401) 714-4261
laurenbradfordesq@gmail.com

A true copy by photostatic process
Attest:
Asst. Clerk

Date Filed 9/23/2022 1:42 PM
Superior Court - Worcester
Docket Number

E-FILED

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts |
| --- | --- | --- |
| | | The Superior Court |
| | | COUNTY Worcester Superior Court (Worcester) |

| Plaintiff | Shelly Brooks, et al | Defendant | UMass Memorial Healthcare, Inc. |
| --- | --- | --- | --- |
| ADDRESS: | 236 Partridge Hill Road | ADDRESS: | 365 Plantation Street |
| Charlton, MA 01507 | | Worcester, MA 01605 | |
| | | | |
| Plaintiff Attorney: | Ryan McLane | Defendant Attorney: | |
| ADDRESS: | McLane & McLane, LLC | ADDRESS: | |
| 269 South Westfield Street | | | |
| Feeding Hills, MA 01030 | | | |
| BBO: | 697464 | BBO: | |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
| --- | --- | --- | --- |
| B22 | Employment Discrimination | F | ☒ YES     ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?                    Is there a class action under Mass. R. Civ. P. 23?
☐ YES    ☒ NO                                ☒ YES    ☐ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date
    1. Total hospital expenses
    2. Total doctor expenses
    3. Total chiropractic expenses
    4. Total physical therapy expenses
    5. Total other expenses (describe below)

Subtotal (1-5):          $0.00

B. Documented lost wages and compensation to date
C. Documented property damages to date
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)

Greater than $50,000 in damages

TOTAL (A-F):          $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Employment Discrimination in denial of religious accommodation

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a)

A true copy by photostatic process
Attest:
Asst. Clerk

| Item # | Detailed Description of Each Claim | Amount |
| --- | --- | --- |
| 1. | | |
| | Total | |

Signature of Attorney/Unrepresented Plaintiff: X  /s/ Ryan P. McLane          Date:    September 23, 2022

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X  /s/ Ryan P. McLane          Date:    September 23, 2022

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality \***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (F) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (A) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Summary Process (Real Property)**

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (X) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6 § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

### TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES    ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

### A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
### MAY RESULT IN DISMISSAL OF THIS ACTION.

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2285CV01088 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Shelly Brooks et al vs. Umass Memorial Healthcare Inc. | | Dennis P. McManus, Clerk of Courts |
| TO:  File Copy | | COURT NAME & ADDRESS Worcester County Superior Court 225 Main Street Worcester, MA 01608 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                                   DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 12/22/2022 | |
| Response to the complaint filed (also see MRCP 12) | | 01/23/2023 | |
| All motions under MRCP 12, 19, and 20 | 01/23/2023 | 02/21/2023 | 03/22/2023 |
| All motions under MRCP 15 | 01/23/2023 | 02/21/2023 | 03/22/2023 |
| All discovery requests **and depositions** served and non-expert depositions completed | 07/20/2023 | | |
| All motions under MRCP 56 | 08/21/2023 | 09/18/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 01/16/2024 |
| Case shall be resolved and judgment shall issue by | | | 09/23/2024 |

**The final pre-trial deadline is not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 09/26/2022 | ASSISTANT CLERK Cheryl Riddle | PHONE (508)831-2358 |
|---|---|---|

Date/Time Printed: 09-26-2022 10:35:12

SCV026\. 08/2018



| **Summons** | CIVIL DOCKET NO.<br>2285CV01083A | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME: Shelly Brooks, et al

Plaintiff(s)

vs.

UMass Memorial Healthcare, Inc.

Defendant(s)

Dennis P. McManus                    Clerk of Courts
Worcester                                    County

COURT NAME & ADDRESS:
Worcester Superior Court
225 Main Street
Worcester, MA 01608

**FILED**
DEC 05 2022
ATTEST _____ CLERK

---

THIS SUMMONS IS DIRECTED TO UMass Memorial Healthcare, Inc. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _____ Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

③

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a) Filing your **signed original** response with the Clerk's Office for Civil Business, Worcester Superior Court 225 Main St., Worcester, MA 01608   (address), by mail or in person **AND**

   b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: Ryan P. McLane, Esq. 269 S. Westfield St. Feeding Hills, MA 01030

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.



3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon.  Heidi E. Brieger                  , Chief Justice on  November  17      , 20 22  . (Seal)

Clerk-Magistrate

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.



**Worcester County Sheriff's Office P.O. Box 1066 Worcester, MA 01613 (508) 752-1100**

I hereby
in this a

11/23/2022

I hereby certify and return that on 11/23/2022 at 8:45 AM I served a true and attested copy of the SUMMONS AND COMPLAINT, PLAINTIFF'S FIRST REQUEST TO PRODUCE in this action in the following manner: To wit, by delivering by email to JUDY ANTI, agent, person in charge at the time of service for UMASS MEMORIAL HEALTHCARE, INC. at JUDY.ANTI@UMASSMEMORIAL.ORG – working remotely. Service Fee ($30.00) Attest ($5.00) Mailing ($3) ($3.00) Mileage ($3.84) Office Expense ($20.00) Conveyance ($2.00) Total: $63.84

N.B.  T

Sarah M Kontaxi
Deputy Sheriff

SUMMC

A true copy by photostatic process
Attest:
Asst. Clerk

Date Filed 12/20/2022 10:26 AM
Superior Court - Worcester
Docket Number 2285CV01088

EFILED



COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 2285CV01088-A

---

SHELLY BROOKS, SHANNON DYER,
JOVANNA MEROLLA, and REBECCA
THOMAS, Individually and on behalf of all
others similarly situated,
     Plaintiffs

v.

UMASS MEMORIAL HEALTHCARE, INC.,
     Defendant

**ASSENTED-TO MOTION TO
EXTEND TIME TO ANSWER OR
OTHERWISE RESPOND TO
PLAINTIFFS' CLASS ACTION
COMPLAINT**

---

Defendant, UMass Memorial Medical Center, Inc.,[1] hereby moves for a 45-day extension

up to and including February 2, 2023 to answer or otherwise respond to Plaintiffs' Class Action

Complaint. Plaintiffs, via undersigned counsel, assent to this motion.

---

[1] Plaintiffs' have incorrectly named UMass Memorial Healthcare, Inc. as the defendant in this matter. The correct entity that employed the Plaintiffs is UMass Memorial Medical Center, Inc. Plaintiffs intend to file an Amended Complaint with the correct entity.

{Client Matter 15602/00616/A8129232.DOCX}          1

Respectfully submitted,

UMASS MEMORIAL MEDICAL CENTER, INC.

By its attorneys,

_Robert L. Kilroy_

Robert L. Kilroy, BBO #636853
Amanda M. Baer, BBO #681386
Massiel L. Sanchez, BBO #699260
Ashlyn E. Dowd, BBO #707121
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
Phone:    508.860.1464
Fax:    508.983.6264
rkilroy@mirickoconnell.com
abaer@mirickoconnell.com
msanchez@mirickoconnell.com
adowd@mirickoconnell.com

Dated: December 20, 2022

**Assented-To by:**

SHELLY BROOKS, SHANNON DYER, JOVANNA MEROLLA, and REBECCA THOMAS, Individually and on behalf of all others similarly situated.

By their attorney,

/s/ Ryan P. McLane
Ryan P. McLane, BBO #697464
McLane & McLane, LLP
269 South Westfield Street
Feeding Hills, MA 01030
Phone:    413.789.7771
Fax:    413.789.7731
ryan@mclanelaw.com

Dated: December 20, 2022

A true copy by photostatic process
Attest:
Asst. Clerk

{Client Matter 15602/00616/A8129232.DOCX}    2

## CERTIFICATE OF SERVICE

I, Massiel L. Sanchez, hereby certify that I have this day served a copy of the foregoing document, via email, pursuant to the Supreme Judicial Court's March 30, 2020, Order Concerning Email Service in Cases Under Rule 5(b) of Mass. Rules of Civil Procedure to Ryan P. McLane, Esq., at McLane & McLane, LLC, 269 South Westfield Street, Feeding Hills, MA 01030, ryan@mclanelaw.com.

Dated: December 20, 2022                            Massiel L. Sanchez

A true copy by photostatic process
Attest:
Asst. Clerk

| **CLERK'S NOTICE** | DOCKET NUMBER<br>**2285CV01088** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|
| CASE NAME:<br>Shelly Brooks et al vs. Umass Memorial Healthcare Inc. | | Dennis P. McManus, Clerk of Courts |
| TO:<br>File Copy<br><br>, | | COURT NAME & ADDRESS<br>Worcester County Superior Court<br>225 Main Street<br>Worcester, MA 01608 |

You are hereby notified that on 12/22/2022 the following entry was made on the above referenced docket:

Endorsement on Motion to extend time to answer or otherwise respond to Plaintiffs' class action complaint (#4.0): ALLOWED

Notice Sent 12/23/22

Judge: Yarashus, Hon. Valerie A

| DATE ISSUED<br>12/23/2022 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br>**Hon. Valerie A Yarashus** | SESSION PHONE#<br>**(508)831-2358** |
|---|---|---|

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

E-FILED

## COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF THE TRIAL COURT

**WORCESTER, SS.**                    **WORCESTER SUPERIOR COURT**

**SHELLY BROOKS, SHANNON DYER, JOV.**
**ANNA MEROLLA, and**
**REBECCA THOMAS, Individually and and on**
**behalf of all others similarly situated,**

**Plaintiffs**                    CIVIL ACTION: 2285CV01088

**v.**

**UMASS MEMORIAL MEDICAL CENTER INC.,**

**Defendants**

---

### AMENDED CLASS ACTION COMPLAINT

### PARTIES

1.  Shelly Brooks is an individual who resides in Charlton, Worcester County, Massachusetts. She was employed by UMass Memorial Medical Center, Inc., working as a registered nurse at UMass Memorial's Southbridge, MA location[1].

2.  Shannon Dyer is an individual who resides in Stafford Springs, Tolland County, Connecticut. She was employed by UMass Memorial Medical Center, Inc., working as a registered nurse at UMass Memorial's Southbridge, MA location.

3.  Jovanna Merolla is an individual who resides in Holland, Hampden County, Massachusetts. She was employed by UMass Memorial Medical Center, Inc., working as a registered at UMass Memorial's Southbridge, MA location.

---

[1] This would be Harrington Hospital, or UMass Memorial Health – Harrington Hospital, Inc., which operates under the UMass Memorial Health system.

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

4. Rebecca Thomas is an individual who resides in Warren, Worcester County, Massachusetts. She was employed by UMass Memorial Medical Center, Inc., working as a phlebotomist at UMass Memorial's Worcester, MA location.

5. Defendant UMass Memorial Medical Center, Inc., is a nonprofit corporation, operating hospitals throughout central Massachusetts, with a principal office at 365 Plantation Street in Worcester, Massachusetts.

## JURISDICTION AND VENUE

6. This is a class action lawsuit against the Defendant for religious discrimination under Title VII of the Civil Rights Act and G.L. c. 151B.

7. Plaintiffs Shelly Brooks and Rebecca Thomas reside in Worcester County and defendant's principal office is located in Worcester County; therefore, venue is proper in accordance with G.L. c. 223 § 1.

8. Plaintiffs have obtained a "Notice of Right to Sue" from the U.S. Equal Employment Opportunity Commission, which allows this Court jurisdiction over the Religious Discrimination claims.

## Factual Background

9. In mid-September of 2021, defendant announced a mandatory COVID-19 vaccination policy wherein all UMass Memorial employees were required to be fully vaccinated against COVID-19.

10. Employees who did not receive either a first dose of Pfizer or Moderna, or one Johnson & Johnson vaccine by December 1, 2021, and who did not receive an approved medical or religious exemption would be considered "separated

2

from employment" from UMass Memorial Health effective December 2, 2021.

11. Defendant, in a correspondence to its employees dated September 15th, 2021, stated that, "A subgroup of the Vaccination Steering Committee has been designated to review, approve or deny all requests for exemption."

12. Plaintiffs and numerous other employees submitted requests for religious accommodation to the defendant using the defendant's form for vaccine exemptions, detailing the sincerely held religious beliefs that preclude them from taking any of the three available COVID-19 vaccines.

13. On this form, defendant required its employees to explain their religious beliefs by answering four questions.

14. Plaintiffs, along with numerous other employees, were given the option to be placed on unpaid leave on November 2, 2021, to obtain a first dose of a COVID-19 vaccine by December 1, 2021 in order to keep their positions, or simply turn in their badge by December 2, 2021.

15. Plaintiffs and numerous other employees were terminated for not receiving any of the COVID-19 vaccines due to their sincerely held religious objections.

**Plaintiff's Sincerely Held Religious Beliefs**

16. Plaintiffs have sincerely held religious beliefs that preclude them from complying with the mandatory COVID-19 Vaccination Policy.

17. A fundamental component of the religious beliefs sincerely held by plaintiffs Dyer, Merolla, and Thomas is that all life is sacred, from the moment of

3

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

18. These beliefs are rooted in Biblical teachings[2], in that God forms children from the womb, personally knows them prior to their birth, and that therefore all life is sacred from the moment of conception:

   a. "Thou shalt not kill[3]." *Exodus* 20:13 (KJV);

   b. "Ye have heard that it was said of them of old time, Thou shalt not kill; and whosoever shall kill shall be in danger of the judgment…" *Matthew* 5:21 (KJV);

   c. "Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee…" *Jeremiah* 1:5 (KJV);

   d. "I was cast upon thee from the womb: thou art my God from my mother's belly." *Psalms* 22:10 (KJV);

   e. "For thou has possessed my reins: thou has covered me in my mother's womb. I will praise thee; for I am fearfully and wonderfully made: marvelous are thy works; and that my soul knoweth right well." *Psalm* 139:13-14 (KJV);

   f. "Thine eyes did see my substance, yet being unperfect; and in thy book all my members were written, which in continuance were fashioned, when as yet there was none of them." *Psalm* 139:16 (KJV);

---

[2] See: https://www.gotquestions.org/abortion-Bible.html
[3] *Exodus* 21:22-25 explains that this includes babies inside of the womb.

4

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

g. "The Lord that made thee, and formed thee from the womb…" *Isaiah* 44:2 (KJV);

h. "Thus saith the Lord, thy redeemer, and he that formed thee from the womb, I am the Lord that maketh all things." *Isaiah* 44:24 (KJV);

i. "The Lord hath called me from the womb; from the bowels of my mother hath he made mention of my name." *Isaiah* 49:1 (KJV);

j. "The Lord that formed me from the womb to be his servant." *Isaiah* 49:5 (KJV);

k. "Let us make man in our image, after our likeness… So God created man in His own image; in the image of God created He him; male and female created he them." *Genesis* 1:26-17 (KJV);

19. Plaintiffs Dyer, Merolla, and Thomas believe, therefore, that taking these precious lives through the practice of abortion is akin to murder of an innocent human expressly forbidden in the Bible. *See, e.g. Exodus* 20:13; ("Though shalt not kill." (KJV)); *Exodus* 21:22-23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 ("the innocent and righteous slay thou not, for I will not justify the wicked." (KJV)); *Genesis* 9:6 ("Whoso sheddeth a man's blood, by man shall his blood be shed: for in the image of God made he man." (KJV)); *Deuteronomy* 27:25 ("Cursed be he that taketh reward to slay an innocent person." (KJV)); *Proverbs* 6:16-17 ("These six things doth the Lord hate: yea, seven are an abomination to him . . . hands that shed innocent blood." (KJV). Plaintiffs' sincerely held religious beliefs, rooted in the Biblical

5

Scriptures above, consider anything that supports, justifies, condones or benefits from the practice of abortion, which takes an innocent life, to be sinful and in complete opposition to the Bible, from which they must abstain and avoid completely.

20. Plaintiffs' sincerely held religious beliefs, rooted in the Scriptures above, are that it is an affront to the Bible's teaching that all life is sacred for them to use a product derived from **or connected in any way to abortion.**

21. Plaintiffs' sincerely held religious beliefs, rooted in the Scriptures above, preclude them from accepting any one of the three currently available COVID-19 vaccines, as all three (Pfizer, Moderna, Johnson & Johnson) were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

22. Johnson & Johnson used aborted fetal cell lines to produce and manufacture its vaccines[4].

23. Moderna and Pfizer/BioNTech COVID-19 vaccines also trace their origins to research on aborted fetal cells and are ultimately derived from research and testing on aborted fetal cell lines: "Early in the development of mRNA vaccine technology, fetal cells were used for 'proof of concept' (to demonstrate how a cell

---

[4] See: https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells, "For the Johnson & Johnson vaccine, fetal cell lines were used in the production and manufacturing stage. To make the Johnson & Johnson vaccine, scientists infect PER.C6 fetal cell lines to grow the adenovirus vector." See also:
https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf, and
https://www.science.org/doi/full/10.1126/science.368.6496.1170

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

could take up mRNA and produce the SARS-CoV-2 spike protein) or to

characterize the SARS-CoV-2 spike protein." See North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021) as referenced in Footnote 3.

24. Pfizer and Moderna's use of aborted fetal cells in the "proof of concept" phase of

their COVID-19 mRNA vaccine development was also confirmed by the

Louisiana Department of Public Health, *You Have Questions, We Have*

*Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020):

https://ldh.la.gov/assets/oph/Center-PHCH/Center-

PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf.

25. In that all three of the subject vaccines are developed and produced from, tested

with, researched on, or otherwise connected to aborted fetal cell lines HEK-293

and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain

from obtaining or injecting any of these products into their bodies, regardless of

the perceived benefit or rationale.

26. Plaintiffs Brooks and Thomas further hold sincere religious beliefs that God is

directing them not to take the vaccination and that to act outside of their faith

and God's command would be sin. (Romans 14:23).Plaintiffs Brooks and

Thomas hold sincere religious beliefs that their bodies belong to God and are

temples of God's Holy Spirit, (1 Cor. 6:19-20), and that injecting any of the

ingredients contained within the three available COVID-19 vaccines would

defile their bodies and dishonor God.

27. These beliefs are rooted in the Bible's teachings that "all Scripture is

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

28. Plaintiffs therefore believe that they must conform their lives life to the commands and teachings of Scripture, including decisions regarding medical care.

29. Plaintiffs share a sincerely held religious belief that compels them to follow the teachings of the Holy Spirit, who has not given them peace or comfort to accept any of the three currently available COVID-19 vaccines.

30. Plaintiffs share a sincerely held religious belief that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. See *John* 16:8,13 ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . when he, the Spirit of truth, is come, he will guide you into all truth: for he shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come." (KJV)).

31. Plaintiffs have a sincerely held religious belief that they are being guided and instructed by the Holy Spirit not to accept any of the three subject vaccines and that it would be a sin against God to do so.

32. Plaintiff Merolla's faith has additionally informed her sincerely held belief that the events that our society is currently experiencing have been foretold by God and described in the book of Revelation, in particular: a warning against receiving the mark of the beast, which reads, "And he causeth all, both small

8

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads." *Revelation 13:17 (KJV)*. "And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name." *Revelation 13:17* (KJV).

33. Plaintiff Merolla's faithful reliance on the teachings of the Bible to guide her decisions has informed her sincerely held belief that the introduction of this vaccine and the measures that have been taken to force its acceptance are no different and no less evil than those referenced in the book of Revelation, and that to accept the vaccine would be to perform a role ushering in the last days, as outlined in Revelation 13.

34. Plaintiff Merolla's sincerely held belief is that the consequence of accepting the mark of the beast in her life is likewise described in the Bible as follows: "And the beast was taken, and with him the false prophet that wrought miracles before him, with which he deceived them that had received the mark of the beast, and them that worshipped his image. These both were cast alive into a lake of fire burning with brimstone." *Revelation 19:20* (KJV); It is therefore Plaintiff Merolla's sincerely held belief that to accept this vaccine would be a grave sin and betrayal of her faith and God, to whom she has devoted her life, and to put her soul in jeopardy.

35. Plaintiffs Brooks, Dyer, Merolla, and Thomas alike seek God's will in their lives through prayer, which forms the basis of their religious and moral consciences.

9

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

36. It is through prayer and reading the Bible that Plaintiffs receive revelation from the Holy Spirit as they attempt to live out God's will for their lives, a sincerely held religious belief also rooted in the Bible's teachings: "[f]or all who are being led by the Spirit of God, these are sons of God." *Romans* 8:14 (KJV), and "[i]f you love me, you will keep my commandments." *John* 14:15.

37. Plaintiffs' sincerely held beliefs are fundamental to the practice of their Christian faith.

38. Plaintiffs have sincerely held religious beliefs that Jesus Christ died on the cross for their sins, was resurrected three days later, and that when He ascended into Heaven, He sent the Holy Spirit to indwell His believers and to guide them in all aspects of their lives. *John* 16:7 ("Nevertheless I tell you the truth, it is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you." (KJV)).; *John* 14:26 ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you." (KJV)).

39. Plaintiffs have sincerely held religious beliefs that they shall receive all answers to their questions through prayer and supplication, including for decisions governing their medical health. See *James* 1:5 ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him." (KJV)); *Mark* 11:24 ("Therefore I say unto you, what things soever ye desire, when ye pray, believe that ye

10

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

receive them, and ye shall have them." (KJV)); *Philippians* 4:6-7 ("but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus." (KJV)); *1 John* 4:14-15 ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him." (KJV)).

40. Through much prayer and reflection, all Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and have been convicted by the Holy Spirit in their beliefs that accepting any of the three subject vaccines is against the teachings of Scripture and would be a sin.

41. Plaintiffs shared their beliefs with Defendant, complying with its policy by providing their beliefs to the best of their ability on Defendant's prescribed form, and asked defendant for exemption and reasonable accommodation for these beliefs, but defendant has unlawfully refused.

42. Plaintiffs can and will comply with all other reasonable alternatives to compliance with COVID-19 Vaccination Policy and to comply with the same alternatives to vaccination that the Defendant has provided as accommodations in the past or to alternatives to vaccination that the Defendant is offering to other employees.

11

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

**Wrongful Denial of Accommodation**

43. Defendant's September 15, 2021 correspondence stated, "If an exemption is
granted, Human Resources and the caregiver's manager will determine
whether a reasonable accommodation can be provided to the caregiver in light
of the exemption."

44. After submitting their request for accommodation, plaintiffs each received
exemption denial letters which were seemingly intended to characterize all of
their beliefs as insincere, hypocritical, illogical, or insignificant in light of their
societal and occupational obligations.

45. Defendant offered no appeal from the decision nor any meaningful dialogue.

46. Asymptomatic transmission of COVID-19 is highly unlikely. See Madewell, Z.
J., Yang, Y., Longini, I. M., Halloran, M. E. & Dean, N. E. (2020). *Household
transmission of SARS-CoV-2: A systematic review and meta-analysis.* JAMA
NETWORK OPEN, *3*(12), 1-17.
https://doi.org/10.1001/jamanetworkopen.2020.31756; Cao, S., Gan, Y., Wang,
C., Bachmann, M., Wei, S., Gong, J., Huang, Y., Wang, T., Li, L., Lu, K., Jiang,
H., Gong, Y., Xu, H., Shen, X., Tian, Q., Lv, C., Song, F., Yin, X. & Lu, Z. (2020).
*Post-lockdown SARS-CoV-2 nucleic acid screening in nearly ten million
residents of Wuhan, China.* NATURE COMMUNICATIONS, *11*(1), 5917.
https://doi.org/10.1038/s41467-020-19802-w; Buitrago-Garcia, D., Egli-Gany, D.,
Counotte, M. J., Hossmann, S., Imeri, H., Ipekci, A. M., Salanti, G. & Low, N.
(2020). *Occurrence and transmission potential of asymptomatic and*

12

*presymptomatic SARS-CoV-2 infections: A living systematic review and meta-analysis.* PLOS MEDICINE, *17*(9), e1003346.

https://doi.org/10.1371/journal.pmed.1003346; Cevik, M., Tate, M., Lloyd, O., Maraolo, A. E., Schafers, J. & Ho, A. (2021). *SARS-CoV-2, SARS-CoV, and MERS-CoV viral load dynamics, duration of viral shedding, and infectiousness: A systematic review and meta-analysis.* THE LANCET, MICROBE, *2*(1), e13-e22. https://doi.org/10.1016/s2666-5247(20)30172-5; Peirlinck, M., Linka, K., Costabal, F. S., Bhattacharya, J., Bendavid, E., Ioannidis, J. P. A. & Kuhl, E. (2020). *Visualizing the invisible: The effect of asymptotic transmission on the outbreak dynamics of COVID-19.* COMPUTER METHODS IN APPLIED MECHANICS AND ENGINEERING, *372*(1), 113140.

https://doi.org/10.1016/j.cma.2020.113410.

47. Plaintiffs' presence at the workplace unvaccinated while wearing a facemask, checking their temperature, monitoring for symptoms, physically distancing from patients and employees when possible would not pose a "direct threat." *See*: Baker, M., Rhee, C., Fiumara, K., Bennett-Rizzo, C., Tucker, R., Williams, S., . . . Klompas, M. (2020). COVID-19 infections among HCWs exposed to a patient with a delayed diagnosis of COVID-19. *Infection Control & Hospital Epidemiology, 41*(9), 1075-1076. https://doi:10.1017/ice.2020.256 (low infection rate amongst healthcare workers exposed to COVID-19 infected patients); Meghan A Baker, Karen Fiumara, Chanu Rhee, Sarah A Williams, Robert Tucker, Paige Wickner, Andrew Resnick, Michael Klompas, CDC Prevention

13

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

Epicenters Program, Low Risk of Coronavirus Disease 2019 (COVID-19) Among Patients Exposed to Infected Healthcare Workers, *Clinical Infectious Diseases*, Volume 73, Issue 7, 1 October 2021, Pages e1878–e1880, https://doi.org/10.1093/cid/ciaa1269 (low infection rate amongst healthcare workers exposed to COVID-positive patients); Cavanaugh AM, Spicer KB, Thoroughman D, Glick C, Winter K. *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021*. MMWR MORB MORTAL WKLY REP 2021;70:1081-1083. https://doi.org/10.15585/mmwr.mm7032e1 (vaccinated racetrack worker study showing that vaccinated workers were over two times **more likely** to be reinfected than unvaccinated workers); Vitale, J., Mumoli, N., Clerici, P., de Paschale, M., Evangelista, I., Cei, M. & Mazzone, A. (2021). *Assessment of SARS-CoV-2 reinfection 1 year after primary infection in a population in Lombardy, Italy*. JAMA INTERNAL MEDICINE, *181*(10), 1407-1409. https://doi.org/10.1001/jamainternmed.2021.2959 (reinfection is incredibly rare); Elijah, S (2022) *On What Basis Did Pfizer Claim 95%*, https://brownstone.org/articles/on-what-basis-did-pfizer-claim-95/ (Analysis of publicly-released Pfizer trial data shows **an actual effectiveness of 12%,** compared to Pfizer's claim of 95%).

48. As the science has progressed on the study of COVID-19, studies have shown that there is a very small statistical difference between vaccinated and unvaccinated individuals when it comes to transmission of the virus. *See*

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

Gunter, Kampf, (November 19, 2021), *The Epidemiological Relevance of the COVID-19-Vaccinated population is increasing.* https://doi.org/10.1016/j.lanepe.2021.100272 (39% of infected are fully vaccinated); Brown CM, Vostok J, Johnson H, et al. *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings* — Barnstable County, Massachusetts, July 2021. MMWR Morb. Mortal Wkly. Rep 2021;70:1059-1062. http://doi.org/10.15585/mmwr.mm7031e2 **(Roughly 3/4 of all infected from outbreak of 469 cases were vaccinated).**

49. Plaintiffs' mask and thermometer are items that they could simply purchase themselves for less than $20, therefore their accommodation would not pose a financial hardship to the Defendant.

50. Massachusetts currently has approximately 5,000 vacancies for nurses at hospitals within the Commonwealth[5].

51. Thus, even if Plaintiffs or any other employee in their positions were to have to quarantine, the loss of staffing for the quarantine period would still prove less than perpetual vacancies due to not allowing vaccinated employees to work at Defendant's hospitals.

## CLASS ALLEGATIONS

52. Plaintiffs bring this action under Mass. R. Civ. P. 23.

---

[5] https://www.statnews.com/2022/07/13/nursing-shortage-massachusetts-hospitals-multimillion-dollar-costs/ (dated July 13, 2022).

53. Through this action, Plaintiffs seek to represent a class of all UMass Memorial employees who have requested or will request religious exemptions and accommodations from its mandatory COVID-19 vaccination policy and who have had those requests unlawfully denied (expressly or constructively).

54. The class is so numerous that joinder of all members is impractical. While the known class size is currently 53 employees (all who have obtained a right to sue from the EEOC), Defendant employs roughly 15,000 people[6]. The precise number and identification of the class members will be ascertainable from UMass Memorial's records during discovery.

55. There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

    a. Did UMass Memorial comply with federal and state law when it denied religious accommodation requests due to prior vaccination history?

    b. Did UMass Memorial comply with federal and state law when it denied the religious accommodation requests of plaintiffs and other employees without conducting a meaningful interactive process?

    c. Did UMass Memorial violate federal and state law by granting exemption requests and providing reasonable accommodations to other employees while denying plaintiffs and other employees their similar requests?

---

[6] https://www.cbsnews.com/boston/news/umass-memorial-health-covid-vaccine-mandate-firings/

16

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

    d. Did UMass Memorial comply with its Title VII obligation to engage in the interactive process when responding to each of its exemption requests?

    e. Did UMass Memorial violate federal and state law by presuming plaintiffs' and other employees' religious beliefs were insincere, both on the face of the exemption application and without further interactive process?

56. Plaintiffs' claims are typical of the claims of the class because they, like the class members, requested exemption and accommodation from the COVID-19 vaccination policy and UMass Memorial denied those requests.

57. For the same reason, Plaintiffs will fairly and adequately protect the interests of the class.

58. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating Plaintiffs' claims. Joinder of all members is impracticable.

## COUNT I
### (Title VII Violation)
### 42 U.S.C. § 2000e, *et seq.*

59. Plaintiffs realleges and adopts each and every allegation in paragraphs 1-58 as if fully set forth herein.

60. Title VII of the Civil Rights Act prohibits Defendant from discriminating against its employees on the basis of their sincerely held religious beliefs.

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

61. Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

62. Plaintiffs informed Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine policy.

63. Defendant failed to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests.

64. Irrespective of the interactive process, Defendant failed to provide Plaintiffs with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiffs because of their religious beliefs.

65. Defendant's failure to provide religious exemption and accommodation to Plaintiffs has caused them harm.

66. Once an employee demonstrates that their religious belief conflicts with an employment condition, "the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship. *Cloutier* v. *Costco Wholesale Corp.,* 390 F.3d 126, 133 (1st Cir. 2004).

67. Defendant did not demonstrate that accommodating Plaintiffs' religious beliefs would have resulted in undue hardship.

68. By failing to engage in a meaningful interactive process, offer any reasonable accommodation, or demonstrate an undue hardship, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

18

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

Wherefore, Plaintiffs requests relief against Defendant as set forth in their prayer for relief.

## COUNT II
### (Religious Discrimination)
### M.G.L. c. 151B

69. Plaintiffs realleges and adopts each and every allegation in paragraphs 1-68 as if fully set forth herein.

70. G.L. c. 151B §4 prohibits Defendant from discriminating against their employees on the basis of their sincerely held religious beliefs.

71. Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

72. Plaintiffs informed Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine policy.

73. Defendant failed to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests.

74. Irrespective of the interactive process, Defendant failed to provide Plaintiffs with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiffs because of their religious beliefs.

75. Defendants' failure to provide religious exemption and accommodation to Plaintiffs has caused Plaintiffs harm.

76. By failing to engage in a meaningful interactive process, offer any reasonable accommodation, or demonstrate an undue hardship, Defendant's discriminatory actions were intentional and/or reckless and in violation of G.L. c. 151B.

19

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

Wherefore, Plaintiffs requests relief against Defendant as set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

77. Certify this action as a class action under Mass. R. Civ. P. 23.

78. Award money damages, punitive damages, costs and attorney fees to Plaintiffs and others similarly situated to be proven at trial.

79. Award any other relief this Court deems equitable and just.

**Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury.**

Plaintiffs, by their attorneys,

/s/ Ryan P. McLane
Ryan P. McLane, Esq. (BBO: 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com

/s/ Lauren Bradford
Laren Bradford, Esq. (BBO: 700084)
3860 20th Ave SE
Naples, FL 34117
(401) 714-4261
laurenbradfordesq@gmail.com

20

A true copy by photostatic process
Attest:
Asst. Clerk

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088



## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 2285CV01088-A

---

SHELLY BROOKS, SHANNON DYER,
JOVANNA MEROLLA, and REBECCA
THOMAS, Individually and on behalf of all
others similarly situated,
     Plaintiffs

v.

UMASS MEMORIAL MEDICAL
CENTER, INC.,
     Defendant

---

### **NOTICE OF FILING REMOVAL**

       Pursuant to 28 U.S.C. § 1446(d), Defendant, UMass Memorial Medical Center, Inc.,

gives notice that on February 2, 2023, it filed with the United States District Court for the

District of Massachusetts a Notice of Removal of this case from the Worcester Superior Court to

the United States District Court for the District of Massachusetts. A copy of the Notice of

Removal is attached hereto as **Exhibit A**.

       Pursuant to 28 U.S.C. § 1446(d), the filing of the Notice of Removal effects the removal

of this matter and this Court shall proceed no further unless and until the case is remanded.

Respectfully submitted,

UMASS MEMORIAL MEDICAL CENTER,
INC.

By its attorneys,

Robert L. Kilroy, BBO #636853
Amanda M. Baer, BBO #681386
Massiel L. Sanchez, BBO #699260
Ashlyn E. Dowd, BBO #707121
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
Phone:    508.860.1464
Fax:    508.983.6264
rkilroy@mirickoconnell.com
abaer@mirickoconnell.com
msanchez@mirickoconnell.com
adowd@mirickoconnell.com

Dated: February 2, 2023

A true copy by photostatic process
Attest:
Asst. Clerk

## CERTIFICATE OF SERVICE

I, Massiel L. Sanchez, hereby certify that I have this day served a copy of the foregoing document, via email, pursuant to the Supreme Judicial Court's March 30, 2020, Order Concerning Email Service in Cases Under Rule 5(b) of Mass. Rules of Civil Procedure to Ryan P. McLane, Esq., at McLane & McLane, LLC, 269 South Westfield Street, Feeding Hills, MA 01030, ryan@mclanelaw.com.

Dated: February 2, 2023

Massiel L. Sanchez

A true copy by photostatic process
Attest:
Asst. Clerk

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.   23-40011

| | |
|---|---|
| SHELLY BROOKS, SHANNON DYER, JOVANNA MEROLLA, and REBECCA THOMAS, Individually and on behalf of all others similarly situated, <br>     Plaintiffs <br><br> v. <br><br> UMASS MEMORIAL MEDICAL CENTER, INC., <br>     Defendant | **NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, Defendant, UMass Memorial Medical Center, Inc. ("Defendant"), hereby files this Notice of Removal of this action from the Superior Court of the Commonwealth of Massachusetts, Worcester County (the "Superior Court"), to the United States District Court for the District of Massachusetts. In support of removal, Defendant states as follows:

1. On January 9, 2023, Defendant obtained a copy of a class action compliant filed by Plaintiffs, Shelly Brooks, Shannon Dyer, Jovanna Merolla, and Rebecca Thomas, individually and on behalf of all others similarly situated, in the Worcester Superior Court captioned: Shelly Brooks et al v. UMass Memorial Medical Center, Inc., Docket No. 2285-CV-01088 (hereinafter, "Amended Class Action Complaint")

2. Plaintiffs have not served any process, pleadings, or order upon Defendant. However, a copy of all process, pleadings, and orders obtained by Defendant are attached to this Notice as **Exhibit A**.

{Client Matter 15602/00616/A8133723.DOCX[Ver:2]}

3.  Despite not having been served with any process, pleadings or orders, Defendant is nonetheless permitted to exercise its right to remove. See Novak v. Bank of New York Mellon Trust Co., NA., 783 F.3d 910, 911 (1st Cir. 2015).

4.  Accordingly, this Notice of Removal is being filed within the time period required by law, as set forth in 28 U.S.C. § 1446(b).

5.  This action arises out of the former employment relationship between Plaintiffs and Defendant. In their Amended Class Action Complaint, Plaintiffs assert that Defendant discriminated against them on the basis of their religion under Title VII, 42 U.S.C. § 2000e et seq., and M.G.L. c. 151B, § 4.

6.  Because Plaintiff has asserted claims for discrimination under Title VII, this action involves a federal question and, therefore, this Court has original jurisdiction over this matter under the provisions of 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1441(a), this action is removable to this Court without regard to the citizenship or residence of the parties.

7.  This Court also has supplemental jurisdiction under the provisions of 28 U.S.C. § 1367 to hear Plaintiffs' state-law claim, which are all related to, and form part of the same case and controversy as, Plaintiffs' claim under Title VII. Therefore, the Court has supplemental jurisdiction over Plaintiffs' state-law claim and the entire case may be removed to this Court.

8.  Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this notice of removal is being given to all adverse parties promptly after the filing of this notice of removal, as indicated in the attached certificate of service. Pursuant to 28 U.S.C. §1446(d), a true and correct copy of this Notice of Removal, along with accompanying exhibits, will be filed with the Superior Court.

9.  Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiffs, without conceding that Plaintiffs have pleaded any claims upon which relief can be granted, and without admitting that Plaintiffs are entitled to any monetary or equitable relief whatsoever.

WHEREFORE, Defendant, UMass Memorial Medical Center, Inc., respectfully requests that the above-referenced action now pending against it in the Superior Court of the Commonwealth of Massachusetts, Worcester County, be removed from there to this Court.

UMASS MEMORIAL MEDICAL
CENTER, INC.,

By its attorneys,

/s/  Robert L. Kilroy
Robert L. Kilroy, BBO #636853
Amanda M. Baer, BBO #681386
Massiel L. Sanchez, BBO #699260
Ashlyn E. Dowd, BBO #707121
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581-3926
Phone: 508.860.1464
Fax:    508.983.6264
rkilroy@mirickoconnell.com
abaer@mirickoconnell.com
msanchez@mirickoconnell.com
adowd@mirickoconnell.com

Dated: February 2, 2023

CERTIFICATE OF SERVICE

I, Robert L. Kilroy, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day. Specifically, I hereby certify that I have this day served a copy of the foregoing document by emailing a copy to Plaintiffs' counsel, Ryan P. McLane, Esq. at ryan@mclanelaw.com.

/s/ *Robert L. Kilroy*
Robert L. Kilroy

Dated: February 2, 2023



Certified to be a true and correct copy of the original
Robert M. Farrell, Clerk
U.S. District Court
District of Massachusetts
By: _____
Deputy Clerk
Date: 02/02/2023

A true copy by photostatic process
Attest:
Asst. Clerk

# Exhibit A

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088
Date Filed 7/3/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

# E-FILED

## COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF THE TRIAL COURT

WORCESTER, SS.                     WORCESTER SUPERIOR COURT

SHELLY BROOKS, SHANNON DYER, JOV.
ANNA MEROLLA, and
REBECCA THOMAS, Individually and and on
behalf of all others similarly situated,

Plaintiffs                          CIVIL ACTION: 2285CV01088

v.

UMASS MEMORIAL MEDICAL CENTER INC.,

Defendants

---

### AMENDED CLASS ACTION COMPLAINT

#### PARTIES

1. Shelly Brooks is an individual who resides in Charlton, Worcester County, Massachusetts. She was employed by UMass Memorial Medical Center, Inc., working as a registered nurse at UMass Memorial's Southbridge, MA location[1].

2. Shannon Dyer is an individual who resides in Stafford Springs, Tolland County, Connecticut. She was employed by UMass Memorial Medical Center, Inc., working as a registered nurse at UMass Memorial's Southbridge, MA location.

3. Jovanna Merolla is an individual who resides in Holland, Hampden County, Massachusetts. She was employed by UMass Memorial Medical Center, Inc., working as a registered at UMass Memorial's Southbridge, MA location.

---

[1] This would be Harrington Hospital, or UMass Memorial Health – Harrington Hospital, Inc., which operates under the UMass Memorial Health system.

Date Filed 2/2/2023 5:10 PM
Superior Court • Worcester
Docket Number 2285CV01088

4. Rebecca Thomas is an individual who resides in Warren, Worcester County, Massachusetts. She was employed by UMass Memorial Medical Center, Inc., working as a phlebotomist at UMass Memorial's Worcester, MA location.

5. Defendant UMass Memorial Medical Center, Inc., is a nonprofit corporation, operating hospitals throughout central Massachusetts, with a principal office at 365 Plantation Street in Worcester, Massachusetts.

### JURISDICTION AND VENUE

6. This is a class action lawsuit against the Defendant for religious discrimination under Title VII of the Civil Rights Act and G.L. c. 151B.

7. Plaintiffs Shelly Brooks and Rebecca Thomas reside in Worcester County and defendant's principal office is located in Worcester County; therefore, venue is proper in accordance with G.L. c. 223 § 1.

8. Plaintiffs have obtained a "Notice of Right to Sue" from the U.S. Equal Employment Opportunity Commission, which allows this Court jurisdiction over the Religious Discrimination claims.

### Factual Background

9. In mid-September of 2021, defendant announced a mandatory COVID-19 vaccination policy wherein all UMass Memorial employees were required to be fully vaccinated against COVID-19.

10. Employees who did not receive either a first dose of Pfizer or Moderna, or one Johnson & Johnson vaccine by December 1, 2021, and who did not receive an approved medical or religious exemption would be considered "separated

2

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088
Date Filed 1/3/2023 9:51 AM
Superior Court - Worcester
Docket Number 2285CV01088

from employment" from UMass Memorial Health effective December 2, 2021.

11. Defendant, in a correspondence to its employees dated September 15th, 2021, stated that, "A subgroup of the Vaccination Steering Committee has been designated to review, approve or deny all requests for exemption."

12. Plaintiffs and numerous other employees submitted requests for religious accommodation to the defendant using the defendant's form for vaccine exemptions, detailing the sincerely held religious beliefs that preclude them from taking any of the three available COVID-19 vaccines.

13. On this form, defendant required its employees to explain their religious beliefs by answering four questions.

14. Plaintiffs, along with numerous other employees, were given the option to be placed on unpaid leave on November 2, 2021, to obtain a first dose of a COVID-19 vaccine by December 1, 2021 in order to keep their positions, or simply turn in their badge by December 2, 2021.

15. Plaintiffs and numerous other employees were terminated for not receiving any of the COVID-19 vaccines due to their sincerely held religious objections.

**Plaintiff's Sincerely Held Religious Beliefs**

16. Plaintiffs have sincerely held religious beliefs that preclude them from complying with the mandatory COVID-19 Vaccination Policy.

17. A fundamental component of the religious beliefs sincerely held by plaintiffs Dyer, Merolla, and Thomas is that all life is sacred, from the moment of

3

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088
Date Filed 1/9/2023 8:34 AM
Superior Court - Worcester
Docket Number 2285CV01088

conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

18. These beliefs are rooted in Biblical teachings[2], in that God forms children from the womb, personally knows them prior to their birth, and that therefore all life is sacred from the moment of conception:

    a. "Thou shalt not kill[3]." *Exodus* 20:13 (KJV);

    b. "Ye have heard that it was said of them of old time, Thou shalt not kill; and whosoever shall kill shall be in danger of the judgment..." *Matthew* 5:21 (KJV);

    c. "Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee..." *Jeremiah* 1:5 (KJV);

    d. "I was cast upon thee from the womb: thou art my God from my mother's belly." *Psalms* 22:10 (KJV);

    e. "For thou has possessed my reins: thou has covered me in my mother's womb. I will praise thee; for I am fearfully and wonderfully made: marvelous are thy works; and that my soul knoweth right well." *Psalm* 139:13-14 (KJV);

    f. "Thine eyes did see my substance, yet being unperfect; and in thy book all my members were written, which in continuance were fashioned, when as yet there was none of them." *Psalm* 139:16 (KJV);

---

[2] See: https://www.gotquestions.org/abortion-Bible.html
[3] *Exodus* 21:22-25 explains that this includes babies inside of the womb.

4

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088
Date Filed 2/2/2023 5:34 PM
Superior Court - Worcester
Docket Number 2285CV01088

g.  "The Lord that made thee, and formed thee from the womb..." *Isaiah* 44:2 (KJV);

h.  "Thus saith the Lord, thy redeemer, and he that formed thee from the womb, I am the Lord that maketh all things." *Isaiah* 44:24 (KJV);

i.  "The Lord hath called me from the womb; from the bowels of my mother hath he made mention of my name." *Isaiah* 49:1 (KJV);

j.  "The Lord that formed me from the womb to be his servant." *Isaiah* 49:5 (KJV);

k.  "Let us make man in our image, after our likeness... So God created man in His own image; in the image of God created He him; male and female created he them." *Genesis* 1:26-17 (KJV);

19. Plaintiffs Dyer, Merolla, and Thomas believe, therefore, that taking these precious lives through the practice of abortion is akin to murder of an innocent human expressly forbidden in the Bible. *See, e.g. Exodus* 20:13; ("Though shalt not kill." (KJV)); *Exodus* 21:22-23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 ("the innocent and righteous slay thou not, for I will not justify the wicked." (KJV)); *Genesis* 9:6 ("Whoso sheddeth a man's blood, by man shall his blood be shed: for in the image of God made he man." (KJV)); *Deuteronomy* 27:25 ("Cursed be he that taketh reward to slay an innocent person." (KJV)); *Proverbs* 6:16-17 ("These six things doth the Lord hate: yea, seven are an abomination to him . . . hands that shed innocent blood." (KJV). Plaintiffs' sincerely held religious beliefs, rooted in the Biblical

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088

Scriptures above, consider anything that supports, justifies, condones or benefits from the practice of abortion, which takes an innocent life, to be sinful and in complete opposition to the Bible, from which they must abstain and avoid completely.

20. Plaintiffs' sincerely held religious beliefs, rooted in the Scriptures above, are that it is an affront to the Bible's teaching that all life is sacred for them to use a product derived from **or connected in any way to abortion.**

21. Plaintiffs' sincerely held religious beliefs, rooted in the Scriptures above, preclude them from accepting any one of the three currently available COVID-19 vaccines, as all three (Pfizer, Moderna, Johnson & Johnson) were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

22. Johnson & Johnson used aborted fetal cell lines to produce and manufacture its vaccines[4].

23. Moderna and Pfizer/BioNTech COVID-19 vaccines also trace their origins to research on aborted fetal cells and are ultimately derived from research and testing on aborted fetal cell lines: "Early in the development of mRNA vaccine technology, fetal cells were used for 'proof of concept' (to demonstrate how a cell

---

[4] See: https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells, "For the Johnson & Johnson vaccine, fetal cell lines were used in the production and manufacturing stage. To make the Johnson & Johnson vaccine, scientists infect PER.C6 fetal cell lines to grow the adenovirus vector." See also:
https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19 Vaccine Fetal Cell Handout.pdf, and
https://www.science.org/doi/full/10.1126/science.368.6496.1170

6

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088
Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088

could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein." See North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021) as referenced in Footnote 3.

24. Pfizer and Moderna's use of aborted fetal cells in the "proof of concept" phase of their COVID-19 mRNA vaccine development was also confirmed by the Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020): https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf.

25. In that all three of the subject vaccines are developed and produced from, tested with, researched on, or otherwise connected to aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their bodies, regardless of the perceived benefit or rationale.

26. Plaintiffs Brooks and Thomas further hold sincere religious beliefs that God is directing them not to take the vaccination and that to act outside of their faith and God's command would be sin. (Romans 14:23). Plaintiffs Brooks and Thomas hold sincere religious beliefs that their bodies belong to God and are temples of God's Holy Spirit, (1 Cor. 6:19-20), and that injecting any of the ingredients contained within the three available COVID-19 vaccines would defile their bodies and dishonor God.

27. These beliefs are rooted in the Bible's teachings that "all Scripture is

7

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088
Superior Court - Worcester
Docket Number 2285CV01088

given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

28. Plaintiffs therefore believe that they must conform their lives life to the commands and teachings of Scripture, including decisions regarding medical care.

29. Plaintiffs share a sincerely held religious belief that compels them to follow the teachings of the Holy Spirit, who has not given them peace or comfort to accept any of the three currently available COVID-19 vaccines.

30. Plaintiffs share a sincerely held religious belief that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. See *John* 16:8,13 ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . when he, the Spirit of truth, is come, he will guide you into all truth: for he shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come." (KJV)).

31. Plaintiffs have a sincerely held religious belief that they are being guided and instructed by the Holy Spirit not to accept any of the three subject vaccines and that it would be a sin against God to do so.

32. Plaintiff Merolla's faith has additionally informed her sincerely held belief that the events that our society is currently experiencing have been foretold by God and described in the book of Revelation, in particular: a warning against receiving the mark of the beast, which reads, "And he causeth all, both small

8

Date Filed 2/2/2023 5:10 PM
Superior Court – Worcester
Docket Number 2285CV01088
Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088

and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads." *Revelation 13:17 (KJV)*.  "And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name." *Revelation 13:17* (KJV).

33. Plaintiff Merolla's faithful reliance on the teachings of the Bible to guide her decisions has informed her sincerely held belief that the introduction of this vaccine and the measures that have been taken to force its acceptance are no different and no less evil than those referenced in the book of Revelation, and that to accept the vaccine would be to perform a role ushering in the last days, as outlined in Revelation 13.

34. Plaintiff Merolla's sincerely held belief is that the consequence of accepting the mark of the beast in her life is likewise described in the Bible as follows: "And the beast was taken, and with him the false prophet that wrought miracles before him, with which he deceived them that had received the mark of the beast, and them that worshipped his image. These both were cast alive into a lake of fire burning with brimstone." *Revelation 19:20* (KJV); It is therefore Plaintiff Merolla's sincerely held belief that to accept this vaccine would be a grave sin and betrayal of her faith and God, to whom she has devoted her life, and to put her soul in jeopardy.

35. Plaintiffs Brooks, Dyer, Merolla, and Thomas alike seek God's will in their lives through prayer, which forms the basis of their religious and moral consciences.

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088

Superior Court - Worcester
Docket Number 2285CV01088

36. It is through prayer and reading the Bible that Plaintiffs receive revelation from the Holy Spirit as they attempt to live out God's will for their lives, a sincerely held religious belief also rooted in the Bible's teachings: "[f]or all who are being led by the Spirit of God, these are sons of God." *Romans* 8:14 (KJV), and "[i]f you love me, you will keep my commandments." *John* 14:15.

37. Plaintiffs' sincerely held beliefs are fundamental to the practice of their Christian faith.

38. Plaintiffs have sincerely held religious beliefs that Jesus Christ died on the cross for their sins, was resurrected three days later, and that when He ascended into Heaven, He sent the Holy Spirit to indwell His believers and to guide them in all aspects of their lives. *John* 16:7 ("Nevertheless I tell you the truth, it is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you." (KJV)).; *John* 14:26 ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you." (KJV)).

39. Plaintiffs have sincerely held religious beliefs that they shall receive all answers to their questions through prayer and supplication, including for decisions governing their medical health. See *James* 1:5 ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him." (KJV)); *Mark* 11:24 ("Therefore I say unto you, what things soever ye desire, when ye pray, believe that ye

Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

receive them, and ye shall have them." (KJV)); *Philippians* 4:6-7 ("but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus." (KJV)); *1 John* 4:14-15 ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him." (KJV)).

40. Through much prayer and reflection, all Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and have been convicted by the Holy Spirit in their beliefs that accepting any of the three subject vaccines is against the teachings of Scripture and would be a sin.

41. Plaintiffs shared their beliefs with Defendant, complying with its policy by providing their beliefs to the best of their ability on Defendant's prescribed form, and asked defendant for exemption and reasonable accommodation for these beliefs, but defendant has unlawfully refused.

42. Plaintiffs can and will comply with all other reasonable alternatives to compliance with COVID-19 Vaccination Policy and to comply with the same alternatives to vaccination that the Defendant has provided as accommodations in the past or to alternatives to vaccination that the Defendant is offering to other employees.

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088

## Wrongful Denial of Accommodation

43. Defendant's September 15, 2021 correspondence stated, "If an exemption is granted, Human Resources and the caregiver's manager will determine whether a reasonable accommodation can be provided to the caregiver in light of the exemption."

44. After submitting their request for accommodation, plaintiffs each received exemption denial letters which were seemingly intended to characterize all of their beliefs as insincere, hypocritical, illogical, or insignificant in light of their societal and occupational obligations.

45. Defendant offered no appeal from the decision nor any meaningful dialogue.

46. Asymptomatic transmission of COVID-19 is highly unlikely. See Madewell, Z. J., Yang, Y., Longini, I. M., Halloran, M. E. & Dean, N. E. (2020). *Household transmission of SARS-CoV-2: A systematic review and meta-analysis.* JAMA NETWORK OPEN, *3*(12), 1-17. https://doi.org/10.1001/jamanetworkopen.2020.31756; Cao, S., Gan, Y., Wang, C., Bachmann, M., Wei, S., Gong, J., Huang, Y., Wang, T., Li, L., Lu, K., Jiang, H., Gong, Y., Xu, H., Shen, X., Tian, Q., Lv, C., Song, F., Yin, X. & Lu, Z. (2020). *Post-lockdown SARS-CoV-2 nucleic acid screening in nearly ten million residents of Wuhan, China.* NATURE COMMUNICATIONS, *11*(1), 5917. https://doi.org/10.1038/s41467-020-19802-w; Buitrago-Garcia, D., Egli-Gany, D., Counotte, M. J., Hossmann, S., Imeri, H., Ipekci, A. M., Salanti, G. & Low, N. (2020) *Occurrence and transmission potential of asymptomatic and*

12

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088
Superior Court - Worcester
Docket Number 2285CV01088

*presymptomatic SARS-CoV-2 infections: A living systematic review and meta-analysis.* PLOS MEDICINE, *17*(9), e1003346.

https://doi.org/10.1371/journal.pmed.1003346; Cevik, M., Tate, M., Lloyd, O., Maraolo, A. E., Schafers, J. & Ho, A. (2021). *SARS-CoV-2, SARS-CoV, and MERS-CoV viral load dynamics, duration of viral shedding, and infectiousness: A systematic review and meta-analysis.* THE LANCET, MICROBE, *2*(1), e13-e22. https://doi.org/10.1016/s2666-5247(20)30172-5; Peirlinck, M., Linka, K., Costabal, F. S., Bhattacharya, J., Bendavid, E., Ioannidis, J. P. A. & Kuhl, E. (2020). *Visualizing the invisible: The effect of asymptotic transmission on the outbreak dynamics of COVID-19.* COMPUTER METHODS IN APPLIED MECHANICS AND ENGINEERING, *372*(1), 113140. https://doi.org/10.1016/j.cma.2020.113410.

47. Plaintiffs' presence at the workplace unvaccinated while wearing a facemask, checking their temperature, monitoring for symptoms, physically distancing from patients and employees when possible would not pose a "direct threat." *See:* Baker, M., Rhee, C., Fiumara, K., Bennett-Rizzo, C., Tucker, R., Williams, S., . . . Klompas, M. (2020). COVID-19 infections among HCWs exposed to a patient with a delayed diagnosis of COVID-19. *Infection Control & Hospital Epidemiology, 41*(9), 1075-1076. https://doi:10.1017/ice.2020.256 (low infection rate amongst healthcare workers exposed to COVID-19 infected patients); Meghan A Baker, Karen Fiumara, Chanu Rhee, Sarah A Williams, Robert Tucker, Paige Wickner, Andrew Resnick, Michael Klompas, CDC Prevention

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088
Date Filed 1/9/2023 8:34 AM
Superior Court - Worcester
Docket Number 2285CV01088

Epicenters Program, Low Risk of Coronavirus Disease 2019 (COVID-19) Among Patients Exposed to Infected Healthcare Workers, *Clinical Infectious Diseases*, Volume 73, Issue 7, 1 October 2021, Pages e1878–e1880, https://doi.org/10.1093/cid/ciaa1269 (low infection rate amongst healthcare workers exposed to COVID-positive patients); Cavanaugh AM, Spicer KB, Thoroughman D, Glick C, Winter K. *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021.* MMWR MORB MORTAL WKLY REP 2021;70:1081-1083. https://doi.org/10.15585/mmwr.mm7032e1 (vaccinated racetrack worker study showing that vaccinated workers were over two times **more likely** to be reinfected than unvaccinated workers); Vitale, J., Mumoli, N., Clerici, P., de Paschale, M., Evangelista, I., Cei, M. & Mazzone, A. (2021). *Assessment of SARS-CoV-2 reinfection 1 year after primary infection in a population in Lombardy, Italy.* JAMA INTERNAL MEDICINE, *181*(10), 1407-1409. https://doi.org/10.1001/jamainternmed.2021.2959 (reinfection is incredibly rare); Elijah, S (2022) *On What Basis Did Pfizer Claim 95%,* https://brownstone.org/articles/on-what-basis-did-pfizer-claim-95/ (Analysis of publicly-released Pfizer trial data shows **an actual effectiveness of 12%,** compared to Pfizer's claim of 95%).

48. As the science has progressed on the study of COVID-19, studies have shown that there is a very small statistical difference between vaccinated and unvaccinated individuals when it comes to transmission of the virus. *See*

14

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088

Gunter, Kampf, (November 19, 2021), *The Epidemiological Relevance of the COVID-19-Vaccinated population is increasing.*

https://doi.org/10.1016/j.lanepe.2021.100272 (39% of infected are fully vaccinated); Brown CM, Vostok J, Johnson H, et al. *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings* — Barnstable County, Massachusetts, July 2021. MMWR Morb. Mortal Wkly. Rep 2021;70:1059-1062.

http://doi.org/10.15585/mmwr.mm7031e2 **(Roughly 3/4 of all infected from outbreak of 469 cases were vaccinated).**

49. Plaintiffs' mask and thermometer are items that they could simply purchase themselves for less than $20, therefore their accommodation would not pose a financial hardship to the Defendant.

50. Massachusetts currently has approximately 5,000 vacancies for nurses at hospitals within the Commonwealth[5].

51. Thus, even if Plaintiffs or any other employee in their positions were to have to quarantine, the loss of staffing for the quarantine period would still prove less than perpetual vacancies due to not allowing vaccinated employees to work at Defendant's hospitals.

## CLASS ALLEGATIONS

52. Plaintiffs bring this action under Mass. R. Civ. P. 23.

---

[5] https://www.statnews.com/2022/07/13/nursing-shortage-massachusetts-hospitals-multimillion-dollar-costs/ (dated July 13, 2022).

15

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088

Date Filed 2/2/2023 8:34 AM
Superior Court - Worcester
Docket Number 2285CV01088

53. Through this action, Plaintiffs seek to represent a class of all UMass Memorial employees who have requested or will request religious exemptions and accommodations from its mandatory COVID-19 vaccination policy and who have had those requests unlawfully denied (expressly or constructively).

54. The class is so numerous that joinder of all members is impractical. While the known class size is currently 53 employees (all who have obtained a right to sue from the EEOC), Defendant employs roughly 15,000 people[6]. The precise number and identification of the class members will be ascertainable from UMass Memorial's records during discovery.

55. There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

   a. Did UMass Memorial comply with federal and state law when it denied religious accommodation requests due to prior vaccination history?

   b. Did UMass Memorial comply with federal and state law when it denied the religious accommodation requests of plaintiffs and other employees without conducting a meaningful interactive process?

   c. Did UMass Memorial violate federal and state law by granting exemption requests and providing reasonable accommodations to other employees while denying plaintiffs and other employees their similar requests?

---

[6] https://www.cbsnews.com/boston/news/umass-memorial-health-covid-vaccine-mandate-firings/

16

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088
Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

    d.  Did UMass Memorial comply with its Title VII obligation to engage in the interactive process when responding to each of its exemption requests?

    e.  Did UMass Memorial violate federal and state law by presuming plaintiffs' and other employees' religious beliefs were insincere, both on the face of the exemption application and without further interactive process?

56. Plaintiffs' claims are typical of the claims of the class because they, like the class members, requested exemption and accommodation from the COVID-19 vaccination policy and UMass Memorial denied those requests.

57. For the same reason, Plaintiffs will fairly and adequately protect the interests of the class.

58. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating Plaintiffs' claims. Joinder of all members is impracticable.

**COUNT I**
**(Title VII Violation)**
**42 U.S.C. § 2000e,** *et seq.*

59. Plaintiffs realleges and adopts each and every allegation in paragraphs 1-58 as if fully set forth herein.

60. Title VII of the Civil Rights Act prohibits Defendant from discriminating against its employees on the basis of their sincerely held religious beliefs.

17

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088

61. Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

62. Plaintiffs informed Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine policy.

63. Defendant failed to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests.

64. Irrespective of the interactive process, Defendant failed to provide Plaintiffs with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiffs because of their religious beliefs.

65. Defendant's failure to provide religious exemption and accommodation to Plaintiffs has caused them harm.

66. Once an employee demonstrates that their religious belief conflicts with an employment condition, "the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship. *Cloutier* v. *Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004).

67. Defendant did not demonstrate that accommodating Plaintiffs' religious beliefs would have resulted in undue hardship.

68. By failing to engage in a meaningful interactive process, offer any reasonable accommodation, or demonstrate an undue hardship, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

Case 4:23-cv-40011    Document 1    Filed 02/02/23    Page 24 of 25

Wherefore, Plaintiffs requests relief against Defendant as set forth in their prayer for relief.

## COUNT II
### (Religious Discrimination)
### M.G.L. c. 151B

69. Plaintiffs realleges and adopts each and every allegation in paragraphs 1-68 as if fully set forth herein.

70. G.L. c. 151B §4 prohibits Defendant from discriminating against their employees on the basis of their sincerely held religious beliefs.

71. Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

72. Plaintiffs informed Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine policy.

73. Defendant failed to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests.

74. Irrespective of the interactive process, Defendant failed to provide Plaintiffs with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiffs because of their religious beliefs.

75. Defendants' failure to provide religious exemption and accommodation to Plaintiffs has caused Plaintiffs harm.

76. By failing to engage in a meaningful interactive process, offer any reasonable accommodation, or demonstrate an undue hardship, Defendant's discriminatory actions were intentional and/or reckless and in violation of G.L. c. 151B.

19

Case 4:23-cv-40011-MRG    Document 10    Filed 03/01/23    Page 82 of 82

Date Filed 2/2/2023 5:10 PM
Superior Court - Worcester
Docket Number 2285CV01088    Case 4:23-cv-40011    Document 1    Filed 02/02/23    Page 25 of 25
      Date Filed 1/9/2023 8:54 AM
Superior Court - Worcester
Docket Number 2285CV01088

Wherefore, Plaintiffs requests relief against Defendant as set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

77. Certify this action as a class action under Mass. R. Civ. P. 23.

78. Award money damages, punitive damages, costs and attorney fees to Plaintiffs and others similarly situated to be proven at trial.

79. Award any other relief this Court deems equitable and just.

**Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury.**

Plaintiffs, by their attorneys,

_/s/ Ryan P. McLane_
Ryan P. McLane, Esq. (BBO: 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com

_/s/ Lauren Bradford_
Laren Bradford, Esq. (BBO: 700084)
3860 20th Ave SE
Naples, FL 34117
(401) 714-4261
laurenbradfordesq@gmail.com

20

A true copy by photostatic process
Attest:
Asst. Clerk